UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-81441-CIV-ALTONAGA

STEPHEN JEROME BUDD,

      Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## ORDER

**THIS CAUSE** came before the Court on Petitioner, Stephen Jerome Budd's Petition Under 28 U.S.C. [Section] 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1]. Petitioner challenges the constitutionality of his state conviction and sentence in case number 2013-CF-003572 in the Fifteenth Judicial Circuit for Palm Beach County, Florida. (*See generally* Pet.). Respondent filed a Response [ECF No. 12]; an Appendix to the Response with an Index [ECF No. 14] and accompanying Exhibits 1–39 [ECF No. 14-1–14-10]; and a Notice of Filing Transcripts [ECF No. 13] with accompanying transcripts [ECF Nos. 13-1 to 13-4]. Petitioner filed a Reply [ECF No. 15]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Petition is dismissed in part on procedural grounds and denied in part on the merits.

## I.  BACKGROUND

On May 26, 2015, Petitioner was charged by an Amended Information with two counts of sexual battery on a person less than 12 years of age (Counts 1 and 2), one count of lewd or

lascivious molestation (Count 3), and two counts of lewd or lascivious exhibition (Counts 4 and 5).  (*See* App., Ex. 1, Third Am. Information 21).[1]

Before his arrest, Petitioner was a teacher in Palm Beach County, Florida.  During the 2006 to 2007 school year, Petitioner taught fourth-grade students, among whom were two girls Petitioner would come to molest several times.  Petitioner's molestation of the victims went unreported for roughly six years until one of the victims ("Victim One") broke her silence.  (*See* Notice, Ex. 1, Trial Tr. 620:1–10).  Victim One first told her boyfriend (*see id.*); and, roughly eight months later, she told her parents (*see id.* 621:2–21).  After this revelation, Victim One and her parents contacted the police.  (*See id.* 626:18–23).

Shortly after Victim One reported Petitioner's crimes, investigators set up a series of controlled calls between Petitioner and the victims to elicit a confession from him.  (*See id.* 627:24–628:10, 646:16–19).  At trial, a recording — approximately two hours in length — of the controlled calls was played for the jury.  (*See id.* 689:14–25).   The State redacted the recording, following the trial court's order on a motion *in limine*, removing any references in the calls to uncharged conduct.  (*See id.* 716:2–6).  On the recording, Petitioner did not admit to molesting the victims nor did he unequivocally deny the numerous allegations the victims lodged against him.  (*See, e.g.*, *id.* 745:11–15, 754:18–24, 768:8–769:15, 788:23–789:25).  After the controlled calls, the police arrested Petitioner.  (*See id.* 837:15–17).   Petitioner voluntarily answered the investigators' questions (*see id.* 839:3–5); however, Petitioner's post-arrest statements were not admitted at trial due to their hearsay nature (*see id.* 838:6–17).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.  Citations to transcript testimony rely on the pagination and line numbering in the original document.

During trial, defense counsel attacked the adequacy of the police investigation by questioning the lead detective on her failure to follow up on certain leads. (*See id.* 847:2–857:8). Defense counsel argued that the lead detective failed to conduct a thorough investigation by, for example, failing to obtain school records to confirm the victims' claims that Petitioner would take the victims out of their other classes to molest them. (*See id.* 848:19–849:14). On redirect, the State offered a sworn statement by the victims' Spanish teacher — which was not read to the jury directly but was described in another witness's testimony — stating that Petitioner took unspecified students from her class; given this statement, the lead investigator did not think it was necessary to obtain school records to confirm the victims' claims. (*See id.* 859:4–17, 864:6–18).

The State's closing argument underscored the large body of probative evidence the State presented. (*See id.* 1044:18–1081:21). The State also argued, in closing, that police conducted a thorough investigation, interviewing over 70 witnesses. (*See id.* 1052:25–1053:4). Defense argued the opposite in closing (*see id.* 1081:24–1112:25), asserting that police conducted an incomplete investigation and, thus, the State failed to carry its heavy burden of proving Petitioner's guilt beyond a reasonable doubt (*see id.* 1083:11–1084:15, 1111:8–24).

A jury found Petitioner guilty as charged on all counts. (*See generally* App., Ex. 1, Jury Verdict, 24–25). As a result, the trial court: adjudicated Petitioner guilty (*see generally* App., Ex. 1, J., 2); sentenced him to three consecutive life sentences on Counts 1, 2, and 3, and two concurrent 15-year sentences on Counts 4 and 5 (*see generally* App., Ex. 1, Sentence 4–16); and declared him a sexual predator under Florida law (*see generally* App., Ex. 1, Order Declaring Pet'r Sexual Predator 31–32).

Petitioner filed a direct appeal raising seven issues. (*See generally* App., Ex. 1, Initial Br. 36–91). The State filed an answer to Petitioner's direct appeal (*see generally* App., Ex. 1, Answer

Br. 93–148), to which Petitioner filed a reply (*see generally* App., Ex. 1, Reply Br. 150–68).  On May 11, 2017, the Florida Fourth District Court of Appeal ("DCA") affirmed the lower court proceedings in a per curiam, unwritten opinion.  *See Budd v. State*, 226 So. 3d 840 (Fla. 4th DCA 2017).  Petitioner filed a motion for rehearing and for certification of question (*see generally* App., Ex. 1, Mot. for Reh'g and for Certification of Question 172–78), which the Fourth DCA denied (*see* App., Ex. 1, Order Den. Mot. for Reh'g and for Certification of Question 180).  The Fourth DCA issued its mandate on June 30, 2017.  (*See* App., Ex. 1, June 30, 2017 Mandate 182).

On February 12, 2018, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (*see generally* App., Ex. 1, R. 3.850 Mot. 184–232), raising six grounds for relief.  In the first five, Petitioner claimed he received ineffective assistance of counsel because of counsel's failure to: (1) investigate and present witnesses who would have supported Petitioner's theory of a recent fabrication or fanciful tale; (2) introduce evidence of a civil suit that would have given the victims a motive to fabricate the allegations and support the theory of defense of a fanciful tale; (3) move for a continuance and review the State's redacted version of certain controlled calls before those calls were played for the jury, move to suppress those calls, or introduce exculpatory statements challenging the State's theory of prosecution; (4) introduce Petitioner's post-arrest statement at the time the recording of the controlled calls was introduced; and (5) object, and request the court give a curative instruction, to improper prosecutorial comments made during closing argument.  (*See id.* 186, 197, 203, 213, 224, 227).  Petitioner's sixth and final claims were the general assertion that Petitioner was cumulatively deprived of his right to effective assistance of counsel.  (*See id.* 227).

The State responded, arguing that the post-conviction court should grant an evidentiary hearing only as the second ground for relief.  (*See generally* App., Ex. 1, Resp. to R. 3.850 Mot.

234–64).  In an Amended Order entered September 11, 2019, the post-conviction court granted an evidentiary hearing on the first, second, and sixth grounds for relief and summarily denied all other grounds.  (*See generally* App., Ex. 9, Am. Order Grant. and Den. R. 3.850 Mot. 183–91).  Following an evidentiary hearing (*see generally* Notice, Ex. 4, Evid. Hr'g Tr.), the post-conviction court denied Petitioner's first, second, and sixth grounds for relief.  (*See generally* App., Ex. 9, Final Order Den. R. 3.850 Mot 288–96).  On appeal, the Fourth DCA affirmed the denial in a per curiam, unelaborated opinion.  *See Budd v. State*, 345 So. 3d 285 (Fla. 4th DCA 2022).  The mandate issued on September 2, 2022.  (*See* App., Ex. 10, Sept. 2, 2022 Mandate 215).

Petitioner filed this Petition on September 12, 2022.[2]  Petitioner  asserts that: (1) the trial court erred in limiting the defense's cross-examination of one of the victims ("Ground One");[3] (2) the trial court erred in allowing evidence of collateral crimes allegedly committed on another victim ("Ground Two"); (3) the trial court erred by admitting the substance of the Spanish teacher's statement that Petitioner's students were sometimes removed from her class ("Ground Three"); (4) defense counsel provided ineffective assistance when he failed to identify and present witnesses who would have supported a fabrication defense ("Ground Four"); (5) defense counsel provided ineffective assistance when he failed to introduce evidence of a civil suit between one of the victims and the school where Petitioner was employed ("Ground Five"); (6) counsel provided ineffective assistance when he failed to review the redacted versions of the controlled calls played to the jury ("Ground Six"); (7) counsel provided ineffective assistance when he failed to introduce

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

[3] In the interest of clarity, the Court adopts Respondent's framing of the Petition's claims as grounds for relief (*see generally* Resp.), rather than the Petitioner's overlapping — and needlessly confusing — framing of the claims as "ground[s,]" "issue[s,]" and "sub-claim[s.]" (Pet. 3–4, 10–19 (alterations added)).

Petitioner's post-arrest statement at the same time the controlled calls were played for the jury ("Ground Seven"); and (8) counsel provided ineffective assistance when he failed to object to the State's mischaracterization of the evidence during closing ("Ground Eight").  (*See generally* Pet.).

## II.  LEGAL STANDARDS

### A.    Deference under Section 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007).  "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (alteration added; quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).  This standard is "difficult to meet."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citation omitted).

Under the AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)– (2) (alteration added).

A state court decision is contrary to established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *See Williams v. Taylor*,

529 U.S. 362, 405–06 (2000).  An "*unreasonable* application of [clearly established] federal law is different from an *incorrect* application of federal law."  *Id.* at 410 (emphasis in original; alteration added).  Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (alteration added; citation omitted).  If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

This is "a highly deferential standard for evaluating state-court rulings" which "demands that state-court decisions be given the benefit of the doubt[.]"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (alteration added; quotation marks, citations, and footnote call number omitted). Deferential review under section 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits.  *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference.  *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019).  If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."  *Wilson*, 138 S. Ct. at 1192.  Finally, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims."  *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

B.  **Harmless Error**

In addition to the requirements imposed by the AEDPA, when a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief unless the petitioner also demonstrates that any error made by the state trial court had a "substantial and injurious effect or influence" in determining the jury's verdict. *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); quotation marks omitted).  To accomplish that, a petitioner must persuade a federal court that he suffered "actual prejudice" from the alleged error.

"Actual prejudice" requires a petitioner to show that "a federal habeas court itself harbors grave doubt about the petitioner's verdict" based on the "whole body of law" — without being limited to Supreme Court precedents as of the time the state court renders its decision, as is the case under the AEDPA. *Davenport*, 596 U.S. at 135–136 (emphasis omitted).  In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or [the] AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests." *Id.* at 134 (alterations added; emphases in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [the] AEDPA[] and *Brecht*." (alterations added)).

C.  **Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984).  This includes not just the right to the presence of counsel, but also "the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

8

When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (alterations added; citation omitted). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687–88. To establish deficient performance, a petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690–91 (alterations added).

A court's review of counsel's performance should "only" focus on "what is constitutionally compelled" and not merely "what is possible or 'what is prudent or appropriate[.]'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (alteration added; footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir.

2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (citation omitted).

To satisfy *Strickland*'s prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694 (alterations added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

## III. DISCUSSION

The Court first determines the exhaustion status of the Petition's grounds for relief; next, the merits of the Petition's exhausted grounds for relief; then, Petitioner's entitlement to an evidentiary hearing; and last, Petitioner's entitlement to a certificate of appealability. The Court addresses each issue in turn below.

### A.   **Exhaustion and Procedural Default**

Before seeking a federal writ of habeas corpus, "a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby [allowing] the State . . . to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (alterations added; quotation marks and citation omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citations and quotation marks omitted). This requirement — acting together with the requirements of section 2254(d) — was designed "to ensure that state proceedings are the central process [for asserting constitutional challenges to state convictions],

not just a preliminary step for a later federal habeas proceeding[.]"  *Harrington*, 562 U.S. at 103 (alterations added; citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).  Consequently, if a claim raised in a section 2254 petition is unexhausted, the claim is barred from consideration and must be dismissed.  *See Brown v. Dixon*, 591 F. Supp. 3d 1251, 1265 (S.D. Fla. 2022) *certificate of appealability denied sub nom Brown v. Dep't of Corr.*, No. 22-11344, 2023 WL 3064699 (11th Cir. Feb. 17, 2023).

Respondent concedes — and the Court agrees — that Grounds Five, Six, Seven, and Eight are exhausted and properly presented for habeas review.  (*See* Resp. 16).  Respondent maintains that Grounds One and Three are unexhausted because Petitioner failed to raise the federal nature of these claims in state court.  (*See id.* 14).  The Court disagrees, because Petitioner raised the relevant arguments in his direct appeal.  Respondent correctly argues that Ground Two is unexhausted (*see id.*), because Petitioner failed to raise the federal nature of this claim on direct appeal.  Respondent is also correct that Ground Four is partially unexhausted (*see id.* 16), because Petitioner named only three of the seven witnesses identified under this ground for relief in his Rule 3.850 motion and the appeal of that motion's denial.  The Court explains.

***Grounds Five, Six, Seven, and Eight***.  Respondent concedes that Grounds Five, Six, Seven, and Eight are exhausted.  (*See* Resp. 16).  The Court therefore reviews Grounds Five, Six, Seven, and Eight for relief on the merits without independently analyzing their exhaustion status. *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion." (alteration adopted; quotation marks and citation omitted)).

***Grounds One and Three***.  Respondent argues that Grounds One and Three are unexhausted.  (*See* Resp. 14).  Regarding Ground One, Respondent claims Petitioner makes only

a "cursor[y] reference[] [to] 'the right of confrontation under the state and federal constitution[s.]'" (Resp. 14 (alterations added; quoting Initial Br. 58).  As to Ground Three, Respondent describes Petitioner's brief as "summarily alleg[ing] that [the] 'admission of [the Spanish teacher's] sworn police statement violated [his] rights [to] cross-examination, confrontation and due process under the state and federal constitutions.'"  (*Id.* (alteration in original; other alterations added; quoting Initial Br. 68; other citation omitted).  Yet, it appears that in his direct appeal, Petitioner raised the federal nature of these claims by framing these grounds for relief as issues relating to Petitioner's right to face his accusers.  (*See* Initial Br. 57–58, 65–69); *see also United States v. Yates*, 438 F.3d 1307, 1312 (11th Cir. 2006) ("The Sixth Amendment provides: '[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.'" (alteration added; other alteration adopted; quoting U.S. Const. amend. VI)).

Because reasonable minds could disagree over Grounds One and Three's exhaustion, the Court conducts a *de novo* review and denies the Grounds on their merits, rather than consider potential procedural deficiencies.  *Dallas*, 964 F.3d at 1307; *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (explaining courts can "deny writs of habeas corpus under [section] 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review" (alteration added; citing 28 U.S.C. § 2254(a)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

***Ground Two***.  Respondent further argues that Ground Two is unexhausted because Petitioner failed to raise the federal nature of this claim before the state court.  (*See* Resp. 14).  The Court agrees.

Petitioner attempts to raise the federal nature of this claim by citing a United States Supreme Court decision and making a passing reference to his federal due process rights. (*See* Initial Br. 65). Neither is sufficient to raise the federal nature of this claim. First, Petitioner cites *Stogner v. California*, 539 U.S. 607 (2003), to support the general proposition that the passage of time makes testimonial evidence less reliable. (*See id.* 63). Aside from that citation, Petitioner argues this ground for relief solely in terms of state law. (*See id.* 58–65).

Next, Petitioner references a purported deprivation of "due process under the state and federal constitutions" stemming from the trial court's ostensible error. (*Id.* 65). This isolated reference to Petitioner's federal due process rights, even when viewed in light of the citation to *Stogner* — which has nothing to do with federal due process, *see generally* 539 U.S. 607 — is insufficient to exhaust this claim because proper exhaustion "requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record[,]" *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (alteration added; quotation marks and citations omitted omitted). Consequently, Ground Two is unexhausted.

When grounds for relief are unexhausted, the Court may dismiss a petition without prejudice as to the unexhausted claims and give a petitioner the opportunity to either exhaust state remedies, bring a new petition presenting only the exhausted claims, or amend the petition to remove any unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982). "But, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the Court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (footnote call number and citations omitted).

Here, Petitioner no longer can litigate his claim under state procedural rules because he raised this claim on direct appeal (*see* Initial Br. 58–65), and it thus cannot be reconsidered in a motion for post-conviction relief, *see McCrae v. State*, 437 So. 2d 1388, 1390 (Fla. 1983) ("Matters which were raised on appeal and decided adversely to the movant are not cognizable by motion under Rule 3.850." (citations omitted)). Since this unexhausted claim is "procedurally barred from being considered in Florida courts, it would serve no purpose to dismiss the petition for further exhaustion because review of [this] claim[] is unavailable in state courts." *Snowden*, 135 F.3d at 736 (alterations added; footnote call number omitted).

Petitioner could overcome this procedural bar by showing either (1) cause and prejudice for his procedural default or (2) actual innocence. *See Granda v. United States*, 990 F.3d 1272, 1286 (11th Cir. 2021). But Petitioner does not argue that he is entitled to either exception. Therefore, this ground for relief is procedurally barred. *See Alexander v. Dixon*, No. 23-cv-60262, 2023 WL 2646262, at *4 (S.D. Fla. Mar. 27, 2023) (explaining that "the habeas petitioner bears the burden of presenting evidence showing that he or she is entitled to rely" on an equitable exception (citing *Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006))).

For the foregoing reasons, the Court dismisses Ground 2 as unexhausted.

***Ground Four***. Respondent argues that Ground Four is partially unexhausted because Petitioner only named three of the seven witnesses identified under this ground for relief in his Rule 3.850 motion and the appeal of that motion's denial. (*See* Resp. 16–17).

In Ground Four, Petitioner names seven witnesses who would have provided testimony probative of his innocence. (*See* Pet. 11–14). These witnesses are: (1) Aileen Adley, a teacher who taught in a room next door to Petitioner's classroom (*see id*. 11–12); (2) Will Avis, Petitioner's

former student who was in Petitioner's class at the same time as the victims (*see id.* 12); (3) Linda Linsin, Petitioner's former "co-teacher" (*id.*); (4) Jane Tucker, a school administrator (*see id.*); (5) Molly Del Re, a fellow teacher (*see id.* 12–13); (6) Cyndee Hackney, a fellow teacher (*see id.* 13); and (7) Carline Kloniger, Petitioner's former student and the victims' classmate (*see id.*).

Petitioner raised this issue in his Rule 3.850 motion, arguing that defense counsel was ineffective for failing to call as witnesses at trial Del Re, Adley, Hackney, Linsin, Rogers, Tucker, and Kloniger. (*See* R. 3.850 Mot 187–88). When the post-conviction court denied this ground for relief, Petitioner raised this issue again on appeal but only named Tucker, Hackney, and Del Re in that pleading. (*See* App., Ex. 10, Appeal of R. 3.850 Mot. Den. 25–29). As such, this ground for relief is exhausted only to the extent that Petitioner argues that counsel was ineffective for failing to call Tucker, Hackney, and Del Re as witnesses. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." (alteration added)); *see also Johnson v. Fla.*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("[A] state-court prisoner must present his claim to the state court in a manner that would allow a reasonable reader to understand the legal and factual foundation for each claim." (alteration added; quotation marks and citation omitted)).

## B.      **The Merits**

The Court now turns to the merits of each of Petitioner's properly exhausted claims for relief.

***Ground One***. In Ground One, Petitioner asserts that the trial court erred "in limiting the defense's cross-examination of A[.]" (Pet. 3 (alteration added)). Further, Petitioner argues that the state court's finding that he could not establish prejudice in relation to this claim was

unreasonable and wrong.   (*See id.* 10).   In short, Petitioner raises a challenge under the Confrontation Clause of the Sixth Amendment.   Petitioner's arguments fail to persuade.

The limitation imposed by the trial court that Petitioner challenges is as follows:

**[DEFENSE COUNSEL]**: And you testified that on other occasions the girls would make reference to this alleged abuse, correct?

**[AM]**: Yes.

**[DEFENSE COUNSEL]**: And after a while they started saying it as a joke?

**[AM]**: They did.

**[DEFENSE COUNSEL]**: They would laugh about it?

**[AM]**: Yes.

**[DEFENSE COUNSEL]**: And it made you feel like it wasn't real?

**[STATE]**: Objection, Judge.

**THE COURT**: Sustained.

**[DEFENSE COUNSEL]**: Can we approach?

**THE COURT**: No.

(Whereupon, a bench conference was had as follows:)

**[STATE]**: Same objection as before we started.   There's no relevance and this witness can't opine as to the truthfulness of these victims' -- of their statements.

**[DEFENSE COUNSEL]**: The difference is that on direct examination she elicited a reason, a very specific reason from this witness as to why she never told an adult, which was she was trying to keep their friendship.   There's a different reason that she has testified as to why she didn't tell anybody, and that was that she no longer believed it and did not want to look stupid.

**THE COURT**: Anything else from anyone?

**[STATE]**: No, Judge.

**THE COURT**: Objection sustained.   Move on.

(Whereupon, the bench conference was concluded.)

(Trial Tr. 969:25–971:9 (alterations added)).

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Nevertheless, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (citation omitted). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (alteration added; citation and emphasis omitted). The Supreme Court has explained that "trial judges retain wide latitude [under] the Confrontation Clause [] to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679 (alterations added).

The trial court's decision to limit this cross-examination did not amount to a violation or an unreasonable application of federal law. To show a Confrontation Clause violation, a defendant must prove he was "prohibited from engaging in otherwise appropriate cross-examination[.]" *Id.* at 680 (alteration added; citation omitted). Under both federal and Florida law, a witness cannot comment on the credibility of another witness. *See United States v. Schmitz*, 634 F.3d 1247, 1269 (11th Cir. 2011) (explaining that "credibility determinations are to be made by the jury, not the testifying witness" (citations omitted)); *Calloway v. State*, 210 So. 3d 1160, 1189 (Fla. 2017) ("[I]t is erroneous to permit a witness to comment on the credibility of another witness because the jury alone determines the credibility of witnesses." (alteration added; citations omitted)). In short,

defense counsel's questions — asking the witness if she believed the victims' accounts of events (*see* Trial Tr. 969:9–971:6) — were improper.  The trial court was thus within its discretion to limit cross-examination.

Even if Petitioner could establish that the trial court erred, he would not be entitled to habeas relief on this claim because he fails to demonstrate prejudice.  *See Davenport*, 596 U.S. at 126.  He does not argue, nor does he offer any evidence showing the trial court's decision to limit cross-examination rendered his trial fundamentally unfair.  (*See generally* Pet.; Reply).  Further, Petitioner faces a voluminous body of high-quality evidence supporting the jury's verdict.  Such evidence includes: (1) the victims' testimony that Petitioner touched Victim One's genitals (*see* Trial Tr. 604:1–20, 881:1–18); (2) the victims' testimony that Petitioner would expose himself to the girls under his desk and force them to kiss his genitals (*see id.* 608:18–611:24, 883:9–18); (3) a fellow student's testimony that he saw the victims go under Petitioner's desk (*see id.* 666:19–24 ("[T]hey would ask some questions about whatever the work they were doing would be.  And they would just end up under [the desk]." (alterations added))); (4) testimony from another victim that Petitioner molested her several times during the year he was her teacher (*see id.* 981:8–984:25); and (5) Petitioner's failure to unequivocally deny the victims' accusations of molestation on the controlled calls (*see id.* 728:2–778:7, 785:3–833:11).

Accordingly, the Court denies Ground One on the merits.

***Ground Three***.  In Ground Three, Petitioner asserts, "the [trial] court erred in admitting the substance of the Spanish teacher's police statement that the [Petitioner's] student[]s were sometimes removed from her class."  (Pet. 4 (alterations added)).  Petitioner does not argue facts to substantiate this claim, instead relying on vague and conclusory statements to support an entitlement to habeas relief.  (*See id.* 10 (stating "Petitioner's Fifth, Sixth and Fourteenth

Amendment protections were implicated" by the trial court's admission of "the substance of the Spanish teacher's police statement")).  Petitioner, therefore, fails to establish that he is entitled to relief on Ground Three.  *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." (alteration added; citations omitted)).

Putting this deficiency aside, the claim still fails on the merits.  Read liberally, the Petition appears to raise a Confrontation Clause challenge to the Spanish teacher's statements.  Even assuming Petitioner had properly framed this ground for relief, the challenge would be futile, because the introduction of the Spanish teacher's sworn statement did not result in a violation or an unreasonable application of federal law.

To recap, at trial, defense counsel challenged the thoroughness of the lead detective's investigation by exposing the detective's failure to corroborate the victims' accusations with school records or the findings of the school's internal investigation into Petitioner's conduct.  (*See* Trial Tr. 848:15–850:15).  To rebut this line of questioning, the State elicited testimony from the lead detective describing the Spanish teacher's sworn statement that Petitioner took certain unspecified students "out of her Spanish class[.]"  (*Id.* 863:21–864:2 (alteration added)).  Relying on the Spanish teacher's statement, the lead detective stated that she did not feel there was "any need to get the school records[.]"  (*Id.* 864:14–23) (alteration added)).

Certainly, the Confrontation Clause, in some circumstances, bars the introduction of out-of-court, testimonial statements at trial.  *See Crawford v. Washington*, 541 U.S. 36, 50–51 (2004).  And while Petitioner is correct that the Spanish teacher's statement was hearsay, the constitutional right to confrontation does not exclude all hearsay evidence.  (*See* Pet. 7, 10); Fla. Stat. § 90.801(1)(b) ("'Hearsay' is a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *Dutton v. Evans*, 400 U.S. 74, 80 (1970). For instance, "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois*, 502 U.S. 346, 356 (1992) (alteration added). Courts deem such admissible hearsay reliable because "a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *Id.* at 357 (citing *Idaho v. Wright*, 497 U.S. 805, 820–21 (1990)).

The Spanish teacher's testimonial statement[4] falls squarely into a well-settled hearsay exception: the State introduced the statement not to prove the truth of the matter asserted, but rather to show why the lead detective made certain decisions during her investigation. (*See* Trial Tr. 860:9–11; Answer Br. 136 (arguing, before the Fourth DCA, that that the Spanish teacher's statement was not inadmissible hearsay because it "was not offered to prove the truth of the matter asserted" but "to show that the [Spanish teacher's] statement made review of the school records unnecessary" (alteration added))). Considering the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted[,]" *Crawford*, 541 U.S. at 59 n.9 (alteration added; citation omitted), the trial court did not err in allowing the State to introduce the Spanish teacher's sworn statement, *see United States v. Jiminez*, 564 F.3d 1280, 1287 (11th Cir. 2009) (allowing an out-of-court statement to explain why certain decisions were made during an investigation).

In any event, even if Petitioner could establish that the trial court's decision was erroneous,

---

[4] The Spanish teacher's statement was testimonial because it could have been offered at trial as testimony. *See United States v. Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019) ("Statements made in the course of an out-of-court conversation are 'testimonial' if 'in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to creat[e] an out-of-court substitute for trial testimony.'" (alteration in original; quoting *Ohio v. Clark*, 576 U.S. 237, 245 (2015); other citations omitted)).

he fails to show, with any degree of specificity, how the trial court's decision in this regard affected the outcome of his trial.   (*See generally* Pet.; Reply); *see also Davenport*, 596 U.S. at 126. Petitioner, thus, fails to show prejudice.

Accordingly, the Court denies Ground Three on the merits.

***Ground Four***.   In Ground Four, Petitioner argues that defense counsel rendered ineffective assistance by failing to call additional defense witnesses to support a theory of fabrication.   (*See* Pet. 11).   The Court denies this claim on the merits because the trial court's ruling on this issue was not contrary to federal law, and defense counsel's performance did not amount to ineffective assistance.

Petitioner raised this issue in his Rule 3.850 motion, arguing that defense counsel was ineffective for failing to call Tucker, Hackney, and Del Re, among others.   (*See* R. 3.850 Mot. 187–97).   The post-conviction court granted an evidentiary hearing on this issue.   (*See* Am. Order Grant. and Den. R. 3.850 Mot. 185).   At the hearing, Petitioner testified that he informed defense counsel of the existence of potential witnesses — such as Tucker, Hackney, and Del Re — and that defense counsel thought these three witnesses "would be good to counter what the State was saying."   (Evid. Hr'g Tr. 27:24–25).   Defense counsel testified that he decided against calling witnesses because his trial strategy focused on attacking the adequacy of the police investigation and arguing that there existed reasonable doubt as to Petitioner's guilt.   (*See id.* 21:14–22:9).

At trial, Petitioner appears to have acquiesced to this strategy.   During the trial, the court recessed to allow Petitioner to confer with his attorney over the decision to not call witnesses (*see id.* 28:15–29:3), after which defense counsel confirmed he would not be calling any witnesses. (*See id.* 29:4–14).   Following the evidentiary hearing, the post-conviction court — acting within the scope of its authority — found defense counsel's testimony more credible than Petitioner's,

*see Cuevas-Rodriguez v. Sec'y, Fla. Dep't of Corr.*, No. 20-cv-904, 2023 WL 6038104, at \*16 (M.D. Fla. Sept. 15, 2023) ("The postconviction court found their testimony credible, and this Court is not in a position to revisit credibility determinations and extends deference to the state court's credibility determinations." (citing *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011))), and concluded that counsel rendered competent assistance (*see* Final Order Den. R. 3.850 Mot. 294).   The Fourth DCA affirmed the post-conviction court's order in an unelaborated affirmance, *see Budd*, 345 So. 3d at 285, and so the Court looks to the post-conviction court's decision, *see Wilson*, 138 S. Ct. at 1192.   The post-conviction court's decision is reasonable, and, as such, is entitled to deference under the AEDPA.

When it comes to the strategic decisions a defense attorney makes at trial, the Supreme Court is clear: "[c]ourts must 'indulge the strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314 (alteration added; other alteration adopted; citations omitted).   "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [courts] [should] seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (alterations added; citation omitted).   To rebut the strong presumption that counsel's strategic decision was reasonable, "a petitioner must establish that no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (citations omitted).

Further, even if counsel erred, Petitioner must also show that counsel's failure to call the witnesses prejudiced his defense.   *See Fortenberry v. Haley*, 297 F.3d 1213, 1227 (11th Cir. 2002) ("Whether or not defense counsel's investigation [of an allegedly exculpatory witness] was in fact unreasonable under *Strickland*, [the alleged testimony] is insufficient to undermine confidence in

[the] conviction." (alterations added; citation omitted)).  A defendant is generally not prejudiced if there is otherwise strong evidence of his guilt.  *See, e.g.*, *Thomas v. United States*, 596 F. App'x 808, 811 (11th Cir. 2015).

Petitioner fails to show that defense counsel's decision to not call witnesses was unreasonable.  At the evidentiary hearing, defense counsel provided sound reasoning for deciding against calling witnesses: he was concerned about the possibility of creating an opening for the State to attack Petitioner's character, and his trial strategy instead focused on attacking the police investigation.  (*See* Evid. Hr'g Tr. 22:10–13).  In reviewing defense counsel's performance, the Court "must be highly deferential" and make "every effort . . . to eliminate the distorting effects of hindsight[.]"  *Strickland*, 466 U.S. at 690 (alterations added).  Given this highly deferential standard of review, the Court agrees with the post-conviction court that counsel's performance did not fall "below an objective standard of reasonableness."  *Id.* at 688.  Certainly, Petitioner has failed to demonstrate that "no competent counsel would have made" a similar decision. *Provenzano*, 148 F.3d at 1332.  Petitioner thus fails to establish deficient performance.

Even if defense counsel had rendered ineffective assistance — which he did not — Petitioner fails to demonstrate that counsel's performance prejudiced his defense.  The burden of establishing prejudice under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative."  *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (quotation marks and citations omitted).  Moreover, "a petitioner's own assertions about whether and how [] witness[es] would have testified are usually not enough to establish prejudice[.]"  *Id.* (alterations added; citations omitted)).

Petitioner provides no independent evidence that, had defense counsel called Tucker,

Hackney, and Del Re, their testimony would have proven favorable to his defense. (*See generally* Pet.; Reply). Thus, Petitioner's speculation on this point is insufficient to establish prejudice. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that "speculation that the missing witnesses would have been helpful . . . is insufficient to carry the burden of a habeas corpus petitioner." (alteration added; quotation marks and citation omitted)). Furthermore, as previously discussed, the State presented strong evidence proving Petitioner's guilt, making it difficult — if not impossible — for Petitioner to demonstrate prejudice. *See Thomas*, 596 F. App'x at 811.

Accordingly, the Court denies Ground Four on the merits.

***Ground Five***. In Ground Five, Petitioner argues that defense counsel rendered ineffective assistance by failing to introduce evidence of a civil suit that would have given the victims motive to fabricate their molestation accusations. (*See* Pet. 14). Like Ground Four, the Court denies this claim on the merits because the post-conviction court's ruling on this issue was not contrary to federal law, and because defense counsel's performance did not amount to ineffective assistance.

Petitioner states that he told his defense counsel to present evidence of the civil suit between the victims and the school. (*See id.*). Petitioner believed that introducing this evidence would demonstrate to the jury that the victims had a motive to make false accusations against him. (*See id.*). Additionally, Petitioner argues that if defense counsel had introduced evidence of the civil suit, the outcome of his trial would have been different. (*See id.* 14–15).

Petitioner raised this claim in his Rule 3.850 motion (*see* R. 3.850 Mot. 197–203); and the post-conviction court granted an evidentiary hearing (*see* Am. Order Grant. and Den. R. 3.850 Mot. 185–86). During the hearing, defense counsel stated that he researched the admissibility of the civil suit, finding it would be admissible and relevant to proving the victims' motive or bias.

(*See* Evid. Hr'g Tr. 23:10–13).  But after discussing the issue with Petitioner, defense counsel decided against using evidence of the civil suit because he thought the jury would interpret it as a concession of Petitioner's guilt.  (*See id.* 23:23–24:5).  Moreover, defense counsel did not think evidence of the civil suit was particularly convincing because it would have required the defense to argue that the victims "hatched a scheme when they were nine to lie about [Petitioner] [a]nd then waited six years until they were fifteen years old to spring that scheme in order to make money."  (*Id.* 24:23–25:7).

Following the evidentiary hearing, the post-conviction court concluded that counsel's "decision not to cross-examine witnesses about the settlement agreement was . . . an appropriate strategic decision" and denied Petitioner's claim.  (Final Order Den. R. 3.850 Mot. 295).  The Fourth DCA affirmed the post-conviction court's order.  *See Budd*, 345 So. 3d at 285.  The post-conviction court's determination is reasonable and entitled to deference under the AEDPA.

Defense counsel's decision to present certain evidence to the exclusion of other evidence is a strategic decision "entitled to a 'strong presumption' of reasonableness."  *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (quoting *Harrington*, 562 U.S. at 104).  Simply put, "strategy" means "counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client."  *Chandler*, 218 F.3d at 1314 n.14.  A strategic decision does not amount to ineffective assistance unless it is patently unreasonable, even if the decision might "have been unwise in retrospect[.]"  *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (alteration added).   "It is reasonable — and not ineffective — for trial counsel to eliminate certain lines of presentation if he has misgivings about hurtful cross-examination and rebuttal witnesses."  *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (quotation marks and citation omitted).

Petitioner fails to demonstrate that defense counsel's decision to not present evidence of the civil suit was patently unreasonable. It was certainly rational for counsel to conclude that (1) accusing two young girls of lying about their molestation was a risky trial strategy, and (2) referencing a civil suit that ended with a significant monetary settlement could have proven fatal to Petitioner's case. (*See* Evid. Hr'g Tr. 24:23–25:7; Final Order Den. R. 3.850 Mot. 294). Further, defense counsel was an attorney with over 20 years of experience exclusively practicing criminal defense (*see* Evid. Hr'g Tr. 13:5–18), and the Court is reluctant "to second guess strategic decisions . . . made by experienced criminal defense counsel[.]" *Provenzano*, 148 F.3d at 1332. Consequently, Petitioner fails to establish that defense counsel was deficient in this regard.

Petitioner also fails to establish prejudice. Even if counsel had used evidence of the settlement agreement to impeach the victims' credibility, Petitioner offers no reason why the jury might have found this defense convincing. Indeed, the State might have used it to Petitioner's disadvantage, as defense counsel feared might happen. (*See* Evid. Hr'g Tr. 24:23–25:7). As such, Petitioner's speculative claims of prejudice fail to persuade. *See Johnson*, 256 F.3d at 1187.

Accordingly, the Court denied Ground Five on the merits.

***Ground Six***. In Ground Six, Petitioner argues that defense counsel rendered ineffective assistance by failing to review the State's redacted versions of the controlled calls and failing to file a motion to suppress. (*See* Pet. 16). As with Petitioner's prior claims, the Court denies this claim on the merits because the post-conviction court's ruling on this issue was not contrary to federal law and counsel's performance did not amount to ineffective assistance.

In the Petition, Petitioner argues that defense counsel should have moved for a continuance and reviewed the redacted versions of the controlled calls before the State played them for the jury. (*See id.* 16). According to Petitioner, the redacted versions of the controlled calls excluded his

statements denying the victims' accusations and, as such, should have been suppressed.  (*See id.*
16–17).

Petitioner raised this claim in his Rule 3.850 motion.  (*See* R. 3.850 Mot. 203–12).  The
post-conviction court denied this claim, finding defense counsel did review the controlled calls
and moved to redact portions of the controlled calls for strategic defense purposes.  (*See* Am. Order
Grant. and Den. R. 3.850 Mot. 186–88).  The post-conviction court also found that Petitioner failed
to demonstrate prejudice because he did not make exculpatory statements on the controlled calls,
as he claimed to have done.  (*See id.*).  The Fourth DCA affirmed the post-conviction court's order.
*See Budd*, 345 So. 3d at 285.  Once more, the post-conviction court's determination was reasonable
and is entitled to deference under the AEDPA.

Petitioner's ineffective-assistance-of-counsel argument fails for two reasons.  First,
counsel had no grounds on which to seek suppression of the recorded calls.  Florida law allows
law enforcement officers or those acting under an officer's "direction" to "intercept a wire, oral,
or electronic communication when such person is a party to the communication or one of the
parties to the communication has given prior consent to such interception and the purpose of such
interception is to obtain evidence of a criminal act."  Fla. Stat. § 943.03(2)(c).

The recording was admissible because the victims — parties to the
communications — consented to the controlled calls.  *See id.*; (Trial Tr. 627:24–628:10, 703:9–
11).  Certainly, defense counsel might have argued for suppression of the recordings if Petitioner
demonstrated that the calls were coerced.  *See, e.g.*, *Harris v. Jones*, No. 15-cv-628, 2017 WL
1017644, at *14 (N.D. Fla. Jan. 31, 2017) ("In the absence of any evidence suggesting coercion,
there was no basis for defense counsel to seek suppression of the controlled call under Florida's
wiretap statutes."), *report and recommendation adopted*, No. 15-cv-628, 2017 WL 1015845 (N.D.

Fla. Mar. 15, 2017).  But Petitioner presents no evidence showing that the controlled calls were "coerced in any way, and, thus," defense counsel had no basis on which to seek suppression of the controlled calls.  *Rightmire v. Fla., Sec'y Dep't of Corr.*, No. 17-10947-D, 2017 WL 3923327, at *2 (11th Cir. May 15, 2017).  Defense counsel thus cannot be deemed ineffective for failing to file a meritless suppression motion.  *See Owens v. Wainwright*, 698 F.2d 1111, 1114 (11th Cir. 1983).

Second, the record refutes Petitioner's claim (*see* Pet. 16) that defense counsel failed to review the redacted versions of the controlled calls.  Defense counsel reviewed the controlled calls and filed a pretrial motion to redact portions that related to Petitioner's uncharged conduct, which the trial court granted.  (*See* Trial Tr. 718:19–719:16).  Counsel also objected to the State's redaction of the victims' statements from the controlled calls, which he argued were inconsistent. (*See id.* 722:22–724:1).  Therefore, Petitioner's claims that defense counsel failed to review the controlled calls are baseless.

Regardless, Petitioner once again offers no evidence of prejudice.  "*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had counsel performed as Petitioner now argues he should have.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (quoting *Strickland*, 466 U.S. at 694).  Petitioner fails to meet this burden, offering only unsubstantiated — and thus, insufficient — claims of prejudice.  *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985); *see also Rockett v. Sec'y, Dep't of Corr.*, No. 08-cv-1417, 2014 WL 3809146, at *12 (M.D. Fla. Aug. 1, 2014) ("The Defendant's claim is facially insufficient because the Defendant has not alleged how he was prejudiced by counsel's erroneous advice." (citation omitted)).  Furthermore, Petitioner provides no reason to overlook the voluminous and highly probative evidence otherwise offered at trial.  Petitioner thus fails to establish that defense counsel's performance in this regard affected the outcome of his trial.

Accordingly, the Court denies Ground Six on the merits.

**Ground Seven**.   In Ground Seven, Petitioner argues that defense counsel rendered ineffective assistance by failing to introduce Petitioner's post-arrest statement to police denying the victims' accusations.  (*See* Pet. 17).   As with the other claims, the Court denies this claim on the merits because the trial court's ruling on this issue was not contrary to federal law, and defense counsel's performance did not amount to ineffective assistance.

In the Petition, Petitioner argues that defense counsel should have introduced his post-arrest statement to police denying the victims' accusations.  (*See id.* 17–18).   Petitioner believes that had his post-arrest statement been introduced, it would have contradicted the controlled calls, which were redacted to make Petitioner appear guilty.  (*See id.*).

Petitioner raised this claim in his Rule 3.850 motion.  (*See* R. 3.850 Mot. 213–24).   The post-conviction court denied the claim, finding that Petitioner's post-arrest statement was inadmissible hearsay.  (*See* Am. Order Grant. and Den. R. 3.850 Mot. 188–89).   The post-conviction court added that the rule of completeness did not apply because the post-arrest statement was to police during an interrogation, while Petitioner's statements on the controlled call were made to the victims.  (*See id.* 189).   "Thus, the two statements 'were made to different persons in different settings and could not be viewed as a single continuous narrative or process of interrogation.'"  (*Id.* (quoting *Carter v. State*, 226 So. 3d 268, 271–72 (Fla. 4th DCA 2017))).   The Fourth DCA affirmed the post-conviction court's order.  *See Budd*, 345 So. 3d at 285.   Once more, the post-conviction court's determination here is reasonable and, as such, entitled to deference under the AEDPA.

Petitioner's post-arrest statement was inadmissible hearsay; thus, defense counsel's failure to move for its admission did not amount to ineffective assistance.   Hearsay "is a statement, other

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fla. Stat. § 90.801(1)(b).  Petitioner's statement made to the police denying the victims' accusations against him was an inadmissible, out-of-court statement offered to prove the matter asserted.  *See Calloway*, 210 So. 3d at 1183 ("Self-serving hearsay statements are generally inadmissible." (citation omitted)).

The Court defers to the post-conviction court's finding that Petitioner's statement did not fall within the exception established by Florida's rule of completeness.  (*See* Am. Order Grant. and Den. R. 3.850 Mot. 189); *see also McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." (citation omitted)).  In sum, Petitioner's statement did not fall under a hearsay exception; consequently, defense counsel had no ground on which to seek its admission.  *See, e.g.*, *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("[I]t goes without saying that counsel is not ineffective for failing to file a meritless [] motion." (alterations added; citation omitted)).

Accordingly, the Court denies Ground Seven on the merits.

***Ground Eight***.  In his eighth, and final claim, Petitioner argues that defense counsel rendered ineffective assistance by failing to object to the State's improper closing argument and failing to request a jury instruction that would cure the prejudice created by the State's comments. (*See* Pet. 19).  As with Petitioner's previous claims, the Court denies this claim on the merits because the trial court's ruling on this issue was not contrary to federal law, and counsel's performance did not amount to ineffective assistance.

Petitioner claims that the State mischaracterized the evidence presented by overstating the thoroughness of the police investigation and asserts that this mischaracterization prejudiced the

outcome of his trial. (*See id.*). Petitioner raised this claim in his Rule 3.850 motion. (*See* R. 3.850 Mot. 224–27). The post-conviction court denied this claim on the ground that Petitioner failed to demonstrate prejudice because the trial court instructed the jury that "closing argument [was] not evidence nor instruction on the law" (Am. Order Grant. and Den. R. 3.850 Mot. 190 (alteration added; citing Trial Tr. 1044:5–11)), and defense counsel "extensively attacked the thoroughness and credibility of" the police investigation (*id.* (alteration added; citing Trial Tr. 1083:11–1090:12)). The post-conviction court determined that these two considerations militated against a finding of prejudice. (*See id.*). The Fourth DCA affirmed the post-conviction court. *See Budd*, 345 So. 3d at 285. The post-conviction court's determination is reasonable and entitled to deference under the AEDPA.

Petitioner's claim arises from defense counsel's failure to object to the following statements made by the State during closing:

> So the only evidence that would be present would come in the form of witnesses and statements that corroborate them.
> Now, I imagine that counsel will also argue that, you know what, Detective Colombino, she just did not do a thorough investigation. He's going to tell you she didn't follow up with the witnesses. She didn't get the reports from [the School].
> But what do you know about that?
> You had an opportunity to hear from Detective Colombino. And what did she tell you?
> She told you that during the course of this investigation law enforcement spoke with over seventy witnesses involved in this matter.
>
> . . . .
>
> Think about it. If every child whose photographed on that classroom photograph had came [sic] in here, each one by one, and said to you, yes, I remember, I remember [Petitioner] had those girls under the desk, I remember that [Petitioner] would let them have special privileges, I remember that they were doing cartwheels in the class, I can imagine that the Defense[']s argument at that point would be it would be too convenient that they all now shared that memory.

(Trial Tr. 1052:14–1053:24 (alterations added)).

Again, a habeas petitioner bears a "heavy burden" in proving claims of ineffective assistance of counsel. *Ward*, 592 F.3d at 1163. This is partly because "[j]udicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, at 689. Petitioner does not meet this burden.

While defense counsel did not object, he nevertheless challenged the State's comments during his own closing argument, emphasizing the defense's position that Petitioner was innocent, and the State failed to prove Petitioner's guilt beyond a reasonable doubt. (*See* Trial Tr. 1082:6–23). Defense counsel supported this position by arguing that (1) police failed to conduct a thorough investigation before arresting Petitioner and instead allowed the investigation to take place "after [Petitioner] was already arrested" (*id.* 1083:15–22); (2) the police undermined the reliability of the witnesses interviewed because they were interviewed after Petitioner's "face was plastered on television and in the newspaper" (*id.*); (3) there was "[z]ero physical . . . [or] scientific evidence" proving Petitioner's guilt (*id.* 1084:10–15); and (4) police failed to locate and interview critical witnesses (*see id.* 1085:8–16). Considering defense counsel's closing — which directly attacked the statements Petitioner now objects to — Petitioner cannot show his counsel's performance was deficient.

Petitioner also fails to demonstrate prejudice. The trial court properly instructed the jury that closing arguments are not evidence (*see id.* 1044:8–9), and "a jury is presumed to follow jury instructions[,]" *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (alteration added; quotation marks and citations omitted). Absent any evidence to the contrary, the trial court's instruction to the jury was enough to safeguard against any alleged prejudice created by the State's characterization of the evidence.

Accordingly, the Court denies Ground Eight on the merits.

### C.    <u>Evidentiary Hearing</u>

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011).  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added).  Here, the pertinent facts of the case are fully developed in the record, and the Court can "adequately assess [Petitioner's] claim[s] without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).  Accordingly, Petitioner is not entitled to an evidentiary hearing. *See id.*

### D.    <u>Certificate of Appealability</u>

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).  A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    The Petition Under 28 U.S.C. [section] 2254 for a Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is **DISMISSED** without prejudice in part on

CASE NO. 22-81441-CIV-ALTONAGA

procedural grounds and is **DENIED** in part on the merits, as described above.

2.     A certificate of appealability is **DENIED**.  Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

3.     Final judgment shall be entered by separate order.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of November, 2023.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record;
       Petitioner, *pro se*